UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
UNITED STATES OF AMERICA for the use and benefit :
of PINNACLE ENVIRONMENTAL CORPORATION, :
:
                    Plaintiff, :
:
    -v- :
:
VOLMAR CONSTRUCTION and TRAVELERS :
CASUALTY AND SURETY COMPANY OF :    23-CV-10732 (JMF)
AMERICA, :
:    MEMORANDUM OPINION
                    Defendants. :        AND ORDER
:
------------------------------------------------------------------X
:
VOLMAR CONSTRUCTION INC., :
:
                Third-Party Plaintiff, :
:
    -v- :
:
BANK OF AMERICA, N.A., :
:
                Third-Party Defendant. :
:
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Pinnacle Environmental Corp. ("Pinnacle") filed this lawsuit against Volmar Construction Inc. ("Volmar") to collect an unpaid debt for construction work it had performed. *See* ECF No. 1. Volmar subsequently filed a Third-Party Complaint against Bank of America, N.A. ("BANA"). In the operative Amended Third-Party Complaint, Volmar alleges that it was the victim of a business email compromise scheme in which it was tricked into wiring the money it owed to Pinnacle from Volmar's account at BANA to an account at Truist Bank ("Truist") not associated with Pinnacle. *See* ECF No. 54 ("TPC"), ¶¶ 6-7. On this basis, Volmar brings two

breach-of-contract claims against BANA: for "fail[ing] to properly monitor and therefore, detect, that the account at Truist to which the funds were wired was fraudulent," *id*. ¶ 8; and for "fail[ing] to conduct a proper investigation after learning of the fraud," *id*. ¶¶ 21-22. The Pinnacle-Volmar dispute has settled, *see* ECF No. 79, leaving only the Volmar-BANA dispute. BANA now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss both of Volmar's claims in the Amended Third-Party Complaint.

That motion is GRANTED. For starters, to plead a breach-of-contract claim, a plaintiff must "provide factual allegations regarding, inter alia, the formation of the contract, the date it took place, and the contract's major terms. Conclusory allegations that a contract existed or that it was breached do not suffice." *Ebomwonyi v. Sea Shipping Line*, 473 F. Supp. 3d 338, 347-48 (S.D.N.Y. 2020) (internal quotation marks omitted). Here, Volmar "fails to allege, in nonconclusory fashion, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated." *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016) (internal quotation marks omitted), *aff'd*, 759 F. App'x 42 (2d Cir. 2019) (summary order); *see also Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 312 (S.D.N.Y. 2014) (dismissing a contract claim where the complaint alleged, "in a conclusory fashion, that there was an express contractual relationship between the parties, but it d[id] not include any details regarding this alleged express contract" (internal quotation marks omitted)). "That failure alone is fatal to [both of Volmar's] contract claim[s]." *Molina v. Palisades Fed. Credit Union*, No. 23-CV-1537 (JMF), 2023 WL 6691020, at *1 (S.D.N.Y. Oct. 12, 2023); *see, e.g., Lim v. Radish Media Inc.*, No 22-1610, 2023 WL 2440160, at *2 (2d Cir. Mar. 10, 2023) (summary order) (affirming dismissal of a contract claim on the ground that the

2

plaintiff had "fail[ed] to . . . provide factual allegations regarding, *inter alia*, . . . the contract's major terms").

In any event, each of Volmar's claims fails for at least one other reason as well. Its first claim — for "fail[ure] to properly monitor, and therefore, detect, that the account at Truist to which the funds were wired was fraudulent," TPC ¶ 8 — is plainly preempted by the U.C.C. Article 4-A of the U.C.C., which New York has adopted, "displaces any common law claim if the UCC's provisions squarely cover the transactions at issue, . . . and was intended to be the exclusive means of determining the rights, duties and liabilities of banks and their customers with respect to [wire] transfers." *Pedersen v. MidFirst Bank*, 527 F. Supp. 3d 188, 193 (N.D.N.Y. 2021) (internal quotation marks omitted); *see Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 89 (2d Cir. 2010). Courts have interpreted that to mean that claims "based on the bank's processing of the wire transfer" — that is, concerning "the mechanics of an electronic fund transfer" — are barred. *Huang v. Hong Kong & Shanghai Banking Corp. LTD*, No. 20-CV-03548 (LTS) (SN), 2022 WL 4123879, at *3 (S.D.N.Y. Sept. 9, 2022) (cleaned up); *see Beck v. Metro. Bank Holding Corp.*, No. 23-CV-07564 (NJC), 2024 WL 3849461, at *10 (E.D.N.Y. Aug. 16, 2024) (holding that a breach-of-contract claim similar to Volmar's was preempted by Article 4-A). Volmar's first claim falls squarely in that prohibited category, as it is based on BANA's processing of the wire transfer initiated by Volmar and would imply a duty — to monitor and investigate transfer instructions submitted by a bank's clients before sending a wire — that is wholly absent from the U.C.C. Thus, it is preempted.[1]

---

[1] Whether Volmar's second contract claim — which concerns BofA's actions *after* the wire transfer was made — is also preempted by the U.C.C. is a closer question, as some courts have held that claims are not displaced if they "are about events that occurred *either before or after* the processing of the wire transfer." *Huang*, 2022 WL 4123879, at *3 (emphasis added) (discussing cases). The Court need not and does not resolve that question here.

3

Meanwhile, Volmar's second claim — for "fail[ure] to conduct a proper investigation after learning of the fraud," TPC ¶¶ 21-22 — is inconsistent with the language of the parties' contracts, which the Court may consider insofar as they are "incorporated by reference . . . [or] integral," to the Amended Third-Party Complaint.  *Pincover v. J.P. Morgan Chase Bank, N.A.*, 592 F. Supp. 3d 212, 221 (S.D.N.Y. 2022) (internal quotation marks omitted).  As BANA explains, the agreements between the parties explicitly established that (1) Volmar had no right to cancel the wire transfer after it was accepted by BANA; (2) BANA was not required to try to cancel the wire transfer, even if requested, but could, in its discretion, try to assist Volmar in doing so; and (3) BANA would not be liable to Volmar if the wire transfer could not be canceled.  ECF No. 67, at 11-15 (quoting and discussing the parties' agreements).  Most notably perhaps, in a Scam Victim Acknowledgement, which Volmar admits to signing after it reported the fraud, *see* TPC ¶ 19, Volmar acknowledged that BANA had "complied with [its] instructions to conduct" the wire transfer and explicitly agreed that "[a]ny action by" BANA "on behalf of" Volmar to recover the lost funds "is a voluntary accommodation by" BANA and that BANA "may pursue" the efforts to retrieve the funds "in its sole and absolute discretion and . . . provides no assurance . . . that" its efforts "will be successful."  ECF No. 73-2, at 2.  Volmar's claim that BANA breached the parties' agreement by failing to conduct "a proper investigation" is defeated by that language.[2]

---

[2]    For the same reason, Volmar's second claim would fail even if it were construed to be a claim for negligence rather than breach of contract.  *See* TPC, Prayer for Relief (using the term "negligence" in reference to the second claim).  Volmar does not cite, and the Court has not found, any authority for the proposition that BofA owed it a duty to conduct a proper investigation given the language of the parties' actual agreements.  *See also, e.g., In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 431 (S.D.N.Y. 2017) (explaining that the economic loss doctrine "generally restricts plaintiffs who have suffered 'economic loss,' but not personal or property injury, to an action for the benefits of their bargain.  If the damages

Notably, in opposing BANA's motion to dismiss, Volmar does not dispute any of the foregoing.  In fact, it explicitly concedes its "failure to cite a specific contract provision," ECF No. 73-5 ("Volmar's Mem."), at 5, and thus arguably abandons its contract claims, *see, e.g.*, *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442 (TPG) (FM), 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . . , a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").  Instead, it pivots and asserts a violation of the covenant of good faith and fair dealing implied in all contracts.  *See* Volmar's Mem. 4-5.  But the Amended Third-Party Complaint does not allege a claim for breach of the implied covenant of good faith and fair dealing, and it is well established that a party may not amend its pleadings through its opposition to a motion to dismiss.  *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (collecting cases).  In any event, any claim for breach of the implied covenant would fail for other reasons as well.  For one thing, "an implied-covenant claim cannot be used to add contract terms not bargained for," *Alta Partners, LLC v. Forge Glob. Holdings, Inc.*, No. 23-CV-2647 (JMF), 2024 WL 1116682, at *5 (S.D.N.Y. Mar. 13, 2024) (cleaned up), yet that is what Volmar's putative claim would do.  For another, Volmar's putative implied-covenant claims are based on the same allegations as those underlying its breach-of-contract claims and seek the same relief.  That is impermissible.  *See id.*; *see also Piuggi v. Good for You Prods. LLC*, No. 32-CV-3665 (VM), 2024 WL 3274638 (S.D.N.Y. July 2, 2024) ("New York law does not recognize a separate cause

---

suffered are of the type remedial in contract, a plaintiff may not recover in tort." (internal quotation marks omitted)).

of action for breach of the implied covenant . . . when a breach of contract claim, based upon the same facts, is also pled." (internal quotation marks omitted)).

In the final analysis, Volmar is effectively

> asking the Court to find, in effect, that a bank that receives an authorized wire transfer instruction and follows that instruction precisely, but learns . . . later from the customer that [it] had been tricked by a third-party to wire the funds, can be liable for executing the instructions. Such a farfetched standard would toss bank payment systems into chaos because the risk of loss from [the customer's] own actions (or inactions) would be unreasonably shifted to the bank. That is not what the contracts here provide for, and . . . is certainly not what the drafters of the U.C.C. had in mind when they drafted Article 4-A.

*Jajati v. JPMorgan Chase Bank, N.A.*, 711 F. Supp. 3d 169, 175 (E.D.N.Y. 2024). Accordingly, and for the reasons stated above, Volmar's Amended Third-Party Complaint must be and is DISMISSED for failure to state a plausible claim. Further, the Court declines to grant Volmar leave to amend the Amended Third-Party Complaint. For one thing, the problems with its claims are substantive, so amendment would be futile. *See, e.g.*, *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (collecting cases). For another, it does not request leave to amend or suggest that it is in possession of facts that would cure the problems with the dismissed claims. *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave to amend if [it] fails to specify how amendment would cure the pleading deficiencies in [its] complaint."); *accord TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505-06 (2d Cir. 2014).

The Clerk of Court is directed to terminate ECF No. 66 and to enter judgment on the Amended Third-Party Complaint consistent with this Memorandum Opinion and Order.

SO ORDERED.

Dated: November 25, 2024
       New York, New York

                                                  JESSE M. FURMAN
                                                  United States District Judge